BORGESON v. UNITED STATES PROJECTILE CO.

(Supreme Court, Appellate Division, Second Department. February 11, 1896.)

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.

In an action by an employé for injuries, it appeared that defendant put plaintiff to work with an hydraulic draw bench, used in making steel tubes, the operation of which was controlled by a wheel, with which the operator regulated the application of power; that, to prevent motion of the machine, such wheel must be at an exact central point, which was not shown by any gauge, but had to be learned by experience or instruction; that the valves leaked, and such defect made it impossible to center the valves and stop the motion; that the defect always existed, was known to defendant, and was not visible to ordinary inspection; that plaintiff did not know of the defect, had not worked on such a machine before, and was not instructed how it worked, except that the foreman drew out one or more tubes before plaintiff began work; that, after plaintiff drew five or six tubes, he took out the die, by direction of the foreman, to be repaired; that he adjusted the wheel to stop the machine, and supposed it was stopped; that only the closest observation could detect motion; that when he returned to put in the die the piston head was about midway between the head of the machine and the die; that in replacing the die he held it in position with his left hand, while a helper screwed it in from the outside; that the piston head moved noiselessly on plaintiff's hand; that, when he first felt it he tried to pull his hand out, but could not; that he seized the wheel with his right hand, turned

it the wrong way, and his hand was crushed. *Held*, that whether defendant was guilty of negligence contributing to the injury, was a question for the jury.

**2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In such case, whether the dangers were latent, or were apparent to ordinary observation, and discoverable by plaintiff in the exercise of proper care, was a question for the jury.

**3. EXCESSIVE DAMAGES.**

Plaintiff, a man 43 years old, lost the middle finger of the left hand. The first and third fingers were scarred, and the tendons were partially contracted; but the fingers were not absolutely stiff, and the bones were sound. He suffered much pain for seven weeks, but since the hand pains him only when he tries to straighten his fingers. He is unable to work as before the injury, and cannot use the hand to advantage. *Held*, that a judgment for $8,000 was excessive, and should be reduced to $5,000.

Appeal from city court of Brooklyn, trial term.

Action by John Borgeson against the United States Projectile Company for personal injuries caused by defendant's negligence. Plaintiff, at the time of the injury, was 43 years old. From a judgment entered on a verdict for $8,000 in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed conditionally.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

William N. Dykman, for appellant.
Charles J. Patterson, for respondent.

HATCH, J.   The action arises out of the relation of master and servant.   Defendant, among other things, manufactured steel tubes, and employed in such manufacture a machine called an "hydraulic draw bench."   It has a cylinder, piston, and piston rod, working upon the same principle as a steam engine; the motive power being water under pressure, instead of steam.   The stroke of the piston rod is horizontal, and extends from the head of the cylinder to a die head,— a distance of 13½ feet.   At the outer end of the piston rod is a cross head or ram, with jaws.   The die head is stationary, and the tube is passed through the fixed die, the size of the tube depending upon the size of the die.   The head of the piston rod comes in contact with the frame of the die, and there the jaws seize the piece of steel, and draw out the tube from the die.   The pressure exerted by the machine is 2,500 pounds to the square inch.   This pressure is applied upon one side or the other of the piston head inside the cylinder; one side forcing it forward, and the other side drawing it back.   The pressure of water in the cylinder is controlled by valves, and these valves are controlled by a small wheel near the die head, so situated that the operator of the machine can control the application of the power with one hand, and adjust the jaws of the ram to the end of the tube with the other.   Turning the wheel in one direction opens the inlet, and shuts the exhaust.   Turning it in the other reverses the action, and, to close both inlet and exhaust, the wheel must be at an exact central point between the extremes.   No gauge is attached to show the point, and the operator acquires the knowledge either through instruction

or by experience. If the wheel is not stopped at the precise center, the piston rods will move in one direction or the other, the rapidity of the movement being dependent upon the pressure; but usually the movement is slow, as the wheel is near the center, and is scarcely perceptible. In the particular machine which is the present subject of examination, the testimony of plaintiff tended to establish that the machine was defective, caused by a leakage of water from the valves, which defect rendered it impossible to center the valves and stop the motion of the piston rods. The defect had always existed, was not visible to ordinary inspection, and defendant had notice of it. Prior to the 25th of January, 1894, plaintiff was employed at a machine in another part of defendant's factory from where the hydraulic machine was situated, engaged in boring out holes in explosive shells. On the day before, he was directed by defendant to work upon the hydraulic machine, and began his service thereon on the 25th. He had not worked upon such a machine prior thereto, and was given no instructions with respect to how the machine worked, except that the foreman of the defendant operated the machine, and drew out one or more tubes, before plaintiff commenced, and then went away. No other instruction was imparted, and no notice of the defect in the machine was given; and plaintiff had no knowledge of its existence, from any source. He began work upon the machine at 7 in the morning, and received an injury to his hand within two hours thereafter. The injury was received in this wise: Plaintiff had drawn five or six tubes, when he noticed that one was scratched. He called the foreman's attention to it. It was decided that the fault was in the die, and plaintiff was directed to remove the die, and take it to the machine room and have it polished. He adjusted the wheel to stop the machine, and supposed that it was stopped. Whether the piston head was at the head of the machine when plaintiff left it is not clear, nor is it important here; for, wherever it was, only the closest observation could detect that it was in motion, and it is doubtful if its motion was apparent to the naked eye. Plaintiff procured the die to be polished and returned to the machine. When he returned the piston head was about midway between the head of the machine and the die. Plaintiff, with the assistance of one Reilly, a helper about the machine, proceeded to place the die in position. In doing this he held the die in with his left hand on the inside of the die head, while Reilly screwed in the die from the outside. While his hand was in this position, the piston head was stealing noiselessly upon it. Plaintiff says he first felt it upon his hand, then he tried to pull it out, could not, called out, seized the wheel with his right hand, turned it in the wrong way, and his hand was crushed. While the evidence was in many respects conflicting, and that upon essential features of the case, the foregoing statement must be regarded as fully established by the evidence. The charge of the court fairly submitted to the jury the question whether defendant was guilty of negligence in placing plaintiff at work upon the machine without warning of the dangers which existed in its operation, without instructions as to the difficulty or impossibility of exactly centering the valves, and without notice of the fact that the pis-

ton rods would not remain stationary. In this regard the case is brought within the principle of the decision is Gates v. State, 128 N. Y. 221, 28 N. E. 373, which is controlling upon all the principal points presented by this record. Whether defendant was guilty of negligence which contributed to the injury; whether or not the dangers were open to ordinary observation, and discoverable by plaintiff in the exercise of proper care; or whether they were latent, and not apparent,—presented a question for the jury, and their finding thereon is conclusive.

A more serious question arises respecting the amount of the verdict. It was the left hand that was injured. The physicians who attended plaintiff testified that the middle finger was amputated; that he has only partial motion of the first and third fingers; that the joints are permanently stiff, the power of the hand materially affected, and much pain attended the injury. His services were worth $25. Edward Miller, a physician called for the defendant, stated: That he examined the hand 11 weeks after the injury, and found the middle finger of the left hand had been amputated at the junction of the hand with the finger, the first and third fingers had scars on the palms or surface, and the tendons which extend the fingers were partially contracted; but the bones were in good condition, and the fingers were not absolutely stiff, at the time. He could flex his fingers, and move them back and forth about half way. That continual motion of the fingers would have overcome the stiffness existing at the trial. Plaintiff testified that he had terrible pain for about two weeks, and for five weeks after he had his finger amputated; that he has no pain in his hand now, except when he tries to straighten his fingers; that he has continually tried the movement of his fingers since his injury. The thumb and little finger were not injured. He has been unable to work as before, and cannot use the hand to advantage. We have recently had occasion to state the rule which governs in this class of causes, and it would serve no useful purpose to restate it. De Wardener v. Railway Co. (Sup.) 37 N. Y. Supp. 133 (not officially reported). Applying that rule to the evidence in this case, we think the verdict excessive in amount. Murray v. Railroad Co., 47 Barb. 196; Coppins v. Railroad Co., 48 Hun, 292.

Our conclusion, therefore, is that the judgment and order appealed from be reversed, and a new trial ordered, unless plaintiff stipulates to reduce the judgment to the sum of $5,000; and, if he so stipulates, then the judgment and order appealed from are affirmed, without costs to either party in this court. All concur.