(25 App. Div. 121.)

O'CONNOR v. BARKER et al.

(Supreme Court, Appellate Division, Second Department. January 18, 1898.)

INJURY TO EMPLOYE—VICE PRINCIPAL.

    Plaintiff, a girl about 15 years old, after being employed in defendant's chocolate factory for a few days in preparing boxes, was instructed by the superintendent to do whatever the foreman should order her. The jury found that the latter directed her to put her hand through an opening into a grinding machine, and take out the chocolate that was inside. Upon doing so, one of her fingers was cut off by the machinery within. She had received no instructions as to the machine, and did not know of the danger. *Held* that, in respect to the duty of instructing her, the foreman was the alter ego of the master, and not a fellow servant of plaintiff.

Appeal from trial term.

Action by Nellie O'Connor, an infant, by Mary O'Connor, her guardian ad litem, against J. H. Barker & Co. From a judgment

for plaintiff entered on a verdict for $3,000, and from an order deny-
ing a new trial, defendants appeal.     Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Herbert C. Smyth, for appellants.
James D. Bell, for respondent.

GOODRICH, P. J.    The plaintiff, a girl of 15 or 16 years of age,
was injured on January 12, 1895, while in the employ of the defend-
ants, who had a factory in the city of New York for the grinding
and manufacture of chocolate.    She had been in the employ of the
defendants five days, when she was set at work upon a grinding
machine, called a "Melanger."    The machine was used for the
purpose of grinding chocolate by means of a heavy, stone roller,
which revolved inside of a circular, pan-shaped receptacle.    At-
tached to the roller was an arm, to which were adjusted scrapers,
which followed the wheel around, keeping the chocolate from ·ᴵᵉ
sides of the pan, and in the track of the wheel.    At one side of the
pan was an opening, with a door, which was to be closed when the
machine was in operation.    At intervals this door was opened, and
the machine reversed, when the scrapers acted so as to throw the
chocolate out through the opening.    At and beneath the opening
was a large, open spout, to receive the chocolate as it was thrown
out and passed into a pan underneath the spout.    The plaintiff
testified that her first work in the factory was in another apart-
ment, preparing boxes for chocolate, where she worked until the day
she was hurt.    On that day she was sent by the superintendent to
the floor below, where the machine was in operation, and was told
to do whatever Julius Pearlstone, the foreman of that floor, ordered
her to do.    Pearlstone directed her to clear the sieve, which she
did.    She was then told by him to empty the chocolate from the pan
into the barrel, after which she asked him what she would do next,
and was told by him, "Put your hand inside the machine, and take
the chocolate, that is inside, out."    She put her hand in, while
kneeling, and was doing this when she felt something sharp passing
over her hand.    One of her fingers was taken off, and her hand
otherwise injured.    There is no evidence that she was instructed
in any way by Pearlstone in the use of the machine.    Reynolds, the
superintendent of the factory, testified that the defendants had
"promulgated" a rule, which he communicated to Pearlstone, that
the machine should always be stopped before removing the choco-
late from the inside; and there is evidence that this was customary,
but there is no conclusive evidence that this order or custom was
communicated to the plaintiff.    Pearlstone denied telling the plain-
tiff to put her hand inside the machine and take the chocolate out,
but there was other testimony both corroborating and contra-
dicting the plaintiff's testimony upon this subject.    This raised a
question of fact, in respect to which the court said:

"I charge you that, if that was not told to her, there is nothing for you to
consider in this case.    If Julius did not tell· her that, then there is nothing for
you to pass upon, and the defendant is entitled to a verdict."

The verdict establishes the fact that the plaintiff was instructed by Pearlstone to put her hand inside the machine to remove the chocolate. It may be a possible explanation of this extraordinary order that he intended, by the words "inside of the machine," to refer to the large spout into which the chocolate was ejected from the machine, or that the order related to times when the machine was stopped. But, assuming either of these hypotheses, there was no evidence that the plaintiff was instructed not to put her hand into the opening while the machine was in operation. This department, in several similar cases, has held that it is proper to submit to the jury the question whether the defendant was guilty of negligence in placing a new operator at work upon a machine without warning him of danger which attended its operation. Borgeson v. Projectile Co., 2 App. Div. 57, 37 N. Y. Supp. 458; Latorre v. Stamping Co., 9 App. Div. 145, 41 N. Y. Supp. 99; Strauss v. Manufacturing Co. (not yet officially reported) 48 N. Y. Supp. 425. The defendants' counsel asked the court to charge "that if they find that Julius did, as a matter of fact, give this direction to the plaintiff,—to put her hand in the door,—that that was the direction of a fellow servant." The court declined to charge as requested, adding, "It is for them to say whether it was or not." The request raised the question whether Pearlstone was the alter ego of the defendants, or the co-servant of the plaintiff. There was evidence that the defendants had "promulgated" a rule that the man who had charge of a machine should always stop the same before cleaning it, and the promulgation appeared to be that this order was given to the superintendent of the factory, and was by him communicated to Pearlstone, but there is no evidence that Pearlstone instructed the plaintiff. The jury, under the charge of the court on that subject, has found by its verdict that Pearlstone directed the plaintiff to put her hand inside the machine to clean out the chocolate; and it is evident that the machine was in motion when she put her hand inside, as otherwise she would not have received her injury. But it was the duty of Pearlstone to instruct the plaintiff as to the operation of the machine, and that she should not put her hand in while it was in motion. In this duty he was the alter ego of the master. His failure to instruct was the cause of the accident. It was held in Corcoran v. Holbrook, 59 N. Y. 520, that:

"As to acts which a master or principal is bound to perform towards his employés, if he delegates the performance of them to an agent, the agent occupies the place of the master; and the latter is deemed present, and liable for the manner in which they are performed."

The failure of Pearlstone to instruct the plaintiff was the cause of the accident, and in this duty he was the alter ego of the master, and not a co-servant of the plaintiff. The modification by the court, and the submission of the question to the jury, were more favorable to the defendants than the law requires.

I have examined the other exceptions, and find in them no reversible error. The judgment must be affirmed, with costs. All concur.