(91 App. Div. 571.)

### FRANCK v. AMERICAN TARTAR CO. et al.

(Supreme Court, Appellate Division, Second Department.  March 11, 1904.)

1. SERVANT'S INJURIES—NEGLIGENCE—CAUSE OF ACCIDENT.

Steam was turned into a wooden tank, the top of which was covered by a metal plate, which was fastened to the tank by screws, and at the coming on of the pressure the plate lifted up, and the escaping steam killed a servant.  The use of steam in the tank was habitual, but the top of the tank where the screws were set in was somewhat rotten and soft.  *Held*, that the turning on of the steam could not be regarded as the sole cause of the accident.

2. SAME—KNOWLEDGE OF MASTER—EVIDENCE.

The tank having been used for a year or two, and a servant having stated to the foreman that the tank was rotten, the jury were warranted in finding that the master should have known of the defect some time before the accident.

3. SAME—MASTER'S LIABILITY—TIME FOR MAKING REPAIRS.

There is no rule that a master, after discovery of a defective place, is entitled to a reasonable time to make repairs.

4. SAME—DUTY TO INSPECT—NEGLIGENCE OF INSPECTOR—MASTER'S LIABILITY.

The negligence of a servant intrusted by the master with the duty of inspection is to be attributed to the master.

5. SAME—CONDUCT OF SERVANT—QUESTION FOR JURY.

Steam was turned into a wooden tank, the top of which was covered by a metal plate, which was fastened to the tank by screws, and at the coming on of the pressure the plate lifted up, and the escaping steam killed a servant.  The use of steam in the tank was habitual, but the top of the tank where the screws were set in was somewhat rotten and soft.  Decedent's usual duties were not near the tank, but he had been put at work there that day as a substitute for an absent workman.  There was evidence that there was a slight escape of steam from under the plate just before the accident, and that another servant directed the foreman's attention to it, but it did not appear that deceased overheard him.  *Held*, that the question of the intestate's culpability was for the jury.

Appeal from Trial Term, Kings County.

Action by Anna Franck, as administratrix of the estate of Carl Gustav Franck, deceased, against the American Tartar Company and another.  From a judgment in favor of plaintiff, defendant the American Tartar Company appeals.  Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

H. Snowden Marshall, for appellant.

J. Aspinwall Hodge (Robert H. Ernest, on the brief), for respondent.

JENKS, J. The action is for breach of a master's duty to his servant. The master is a manufacturer of cream of tartar. It used in the process a wooden tank 22 feet high and 14 feet in diameter. Suspended in the center of the tank was a copper cylinder about 2½ feet in diameter. Two steam pipes which ran through the cylinder ejected steam at the lower ends, and thereby both agitated and boiled the material put into the tank. Heat was also furnished by a coil of steam pipe at the bottom of the tank. The top of the cylinder was covered by a copper plate about 3 feet in diameter and 8 feet in circumference, fastened down into the wooden top of the tank by wooden screws at intervals of about 8 inches. In the center of this copper plate was a hole about 6 by 8 inches, through which the said two steam pipes passed. This was left open for the steam to blow off. The tank was filled with a liquid, and before and after the steam was turned on, workmen stood on the top of the tank to shovel into the hole ground argol which was placed on the top of the tank surrounding the hole. The tank was heated to the boiling point. The intestate, a grinder of argols, was asked on the day of the accident, by defendant's foreman, to take the place of an absent shoveler, and to aid Nelson, the other regular shoveler on the top of the tank. Shortly before the accident, Nelson saw that some steam was escaping from the edge of the copper plate at one side of it. He called the attention of the foreman to it, after closing down the steam. The foreman answered: "To hell with it. Go ahead with your work." The foreman took hold of the steam valve that lets in the steam, and Nelson and the intestate took up their shovels. It is clear enough that the foreman then turned on the steam. Almost immediately, there was a leakage or explosion of steam or water. The copper plate tipped right up, and the steam and water shot out laterally under the copper plate, and burned the intestate so that he subsequently died.

The plaintiff insists that if the copper plate had been properly fastened down it would have resisted the pressure (and pressure upon the plate was to be expected), so that the steam, water, or liquid would have taken the outlet provided for it, namely, the hole in the plate, and the intestate would have been unscathed. A breach of duty alleged is the failure of the master to provide a safe place for his workman. The proposition is that the place was dangerous for the following reasons, which are sustainable by the evidence: Wood alternately wet and dry rots quicker than wood either continuously wet or dry. This wooden top was so rotten that some time before the day of the accident the shoveler Nelson easily pushed the full length of his penknife blade, two inches and a half, down into the wood. The plate was fastened by wooden screws, some of them being loose on one side of that plate. There is evidence of the practice of shifting the screw beds in order that the fastenings might be more secure. The plate was screwed into the surface of the wood, and not countersunk, so that naturally the shovels in use came in contact with the edge of the plate. So far as the question of the knowledge of the master is concerned, even the defend-

ant's superintendent testifies that the wooden top was fairly good, mean-
ing thereby that "after saturation with water and steam daily for over
a year, or two years, perhaps, it would be soggy, and not quite so
strong as when first put in, and that the screws would not hold so well."
Nelson, the shoveler, who made the test with his penknife, testifies that
he had told the defendant's foreman that the place was rotten.

The learned counsel for the appellant first insists that the softness
of the top of the wood does not figure in the case, for the reason that
the accident was not due to the giving way of the wood, but to the fact
that the screws of the plate were not driven down into the wood.
There is some warrant for this contention on the facts in certain state-
ments of the witness Nelson on cross-examination.   But the witness
had testified on the direct:

"The screws were not sticking up that much, but loose, so that the head of
the screw was above the copper plate, except on one side."

And he had corrected his statements on his redirect, as follows:

"Those screws were above the copper plate, when I looked at them, one-
eighth of an inch; you might say the head of the screw was standing on top
of the— I didn't mean to say to the counsel on the other side the screws were
standing up outside of the copper plate like that."

I cannot agree with the learned counsel that the act of Poulson in
turning on the steam was the sole cause of the accident.   The master
was bound to furnish a place reasonably safe under the usual con-
ditions that attended when the shovelers were at work.   The turning
on of the steam was a usual circumstance.   If the wood had been
sound, and the plate sufficiently fastened, or, perhaps, if either of these
circumstances had appeared, presumably the turning on of the steam
would have resulted in no accident, for that was but a usual act.   If
the plate did not hold under such circumstances, can it be said that
the ordinary act of turning the steam was the sole cause of the accident?
Could not the jury say that in any event the defects in question were
concurrent in the accident?   The learned counsel, while stating that
he can find no direct authority in this state for the proposition, con-
tends that the master, after discovery, is entitled to a reasonable time
to make repairs.   So far as this proposition is in the case, it may be
said that the jury were entitled to find that the defendant ought, in the
exercise of reasonable care, to have known some time before this ac-
cident that the wooden top of the vat was rotten.   But, in any event,
it surely is not the law that, when the master is apprised of a defective
place, he is not liable if he continues to offer it to the servant, provided
an accident happens before he can with due diligence make the place
safe.   I know of no such interval of immunity.

The appellant relies upon Koehler v. New York Steam Co., 84 App.
Div. 221, 82 N. Y. Supp. 588, for the proposition that, if the fault of
the master lay in inspection, the master is not liable.   Notwithstanding
the language of the court in Byrnes v. N. Y., L. E. & W. R. R. Co.,
113 N. Y. 256, 21 N. E. 50, 4 L. R. A. 151, I am of opinion that, un-
der earlier and later authorities, it is well settled that the master can-
not absolve himself, so far as the duty of inspection is concerned, by
showing that he provided for an inspection by servants generally com-

petent, or that an inspection was made; or, in other words, that the negligence of a servant competent to inspect, and intrusted with the duty of inspection, cannot be attributed to the master. I think that the rule and the reason for it are well stated by Tracy, J., in Durkin v. Sharp, 88 N. Y. 225:

"The inspection of the track was a duty of the master. Had such duty been carelessly and negligently performed, even by a competent inspector, the master would still be liable. To excuse him from liability, the track must have been carefully inspected by a competent inspector."

In Byrne v. Eastmans Co. of N. Y., 163 N. Y. 461, 465, 57 N. E. 738, the court, per Landon, J., say:

"It was the defendant's duty to furnish to its employés good and suitable appliances, and to use reasonable care to keep them so. Cone v. Del., L. & W. R. R. Co., 81 N. Y. 206 [37 Am. Rep. 491]; Probst v. Delamater, 100 N. Y. 266; Doing v. N. Y., Ontario & W. R. R. Co., 151 N. Y. 579 [45 N. E. 1028]. Reasonable care involves inspection, and negligence in respect of it, in such cases as this, is the negligence of the master, and none the less so when the inspection is committed to a servant. Durkin v. Sharp, 88 N. Y. 225; Bailey v. Rome, W. & O. R. R. Co., 139 N. Y. 302 [34 N. E. 918]; Hankins v. N. Y., L. Erie & W. R. R. Co., 142 N. Y. 416 [37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616]; Fuller v. Jewett, 80 N. Y. 46 [36 Am. Rep. 575]."

In Eaton v. N. Y. C. & H. R. R. Co., 163 N. Y. 391, 57 N. E. 609, 79 Am. St. Rep. 600, the court, per Cullen, J., say:

"There can be no question that, apart from the rule quoted, inspectors are not fellow servants of the trainmen, so as to relieve a railroad company from liability to the latter for injuries occasioned by the negligence of the former. The duty which the master, as such, owes to his employés, of exercising reasonable care that the appliances furnished them should be safe and suitable, cannot be delegated so as to relieve the master from responsibility, and, so far as it is performed by others, the negligence of any servant, agent or employé in the work is deemed, not the negligence of a fellow servant, but that of the master himself. Fuller v. Jewett, 80 N. Y. 46 [36 Am. Rep. 575]; Bailey v. R., W. & O. R. R. Co., 139 N. Y. 302 [34 N. E. 918]. In the last case it is said: 'The master is never exonerated by the negligent omission of subordinates to perform duties, which are imposed upon him in his character as master, resulting in injury to other employés.' Inspection to discover whether an appliance is defective is as much a part of the work of furnishing safe appliances as reparation after the defect is discovered, and in the Bailey Case the negligence alleged was failure to inspect."

In Simone v. Kirk, 173 N. Y. 7, 65 N. E. 739, the court, per Vann, J., say:

"It is the duty of a master, in employing servants, to use reasonable care to provide them with proper appliances and a safe place to work, and this duty is so firmly fastened upon him by law that he cannot delegate it without liability for the negligence of one to whom he intrusts it. The duty of using reasonable care in inspecting the place where servants are set at work is also the master's duty, which he must properly discharge at his peril, either personally or through another."

Of course, if the duty, although devolved, still be that of the master, the neglect of him who discharges the duty is the neglect of the master. For it would be anomalous and illogical to hold the master, who personally inspected, for neglect, and yet free him provided the act of inspection was vicarious. This rule, of course, may well be subject to the qualification suggested in the opinion of Cullen, J., in McGuire v.

Bell Telephone Co., 167 N. Y. 208, 212, 60 N. E. 433, 52 L. R. A. 437, to the effect that "the application of this rule may depend upon the nature of the work and the manner of its conduct." The rule and its qualification were considered by this court in Dittman v. Edison El. Illuminating Co., 87 App. Div. 68, 83 N. Y. Supp. 1078.

I think that the question as to the conduct of the intestate was for the jury. It appeared that he was usually employed in the grinding of argols, that he had never been at this tank in any capacity when it was used for boiling purposes, and that he was called in this day, as a substitute for an absent shoveler, by the defendant foreman. There is evidence that he could not have heard the conversation, between Nelson and the foreman, that preceded the accident. It is not to be assumed as matter of law that he could have known, or ought to have known, that the wood was rotten, or that the plate was insecurely fastened thereon, or that the slight escape of steam from the edge of the plate was an indication of approaching danger, though it was clear enough to Nelson, who had been a shoveler for a year and a half, or to Poulson, the foreman. I think that the question of his culpability was for the jury. Finn v. Cassidy, 165 N. Y. 584, 589, 59 N. E. 311; Borgeson v. United States Projectile Co., 2 App. Div. 57, 37 N. Y. Supp. 458.

The judgment and order should be affirmed, with costs. All concur.