(125 App. Div. 691.)

DITTMAN v. EDISON ELECTRIC ILLUMINATING CO.

(Supreme Court, Appellate Division, Second Department.   April 24, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE — ACTIONS —
   PLEADING—MANNER OF RECEIVING INJURY.
      Where a piece of belt near which plaintiff was working was in some manner torn or thrown off, striking him in the right eye, destroying its sight, an allegation that the belt broke, and a piece thereof flew off and struck plaintiff in the right eye, describes the occurrence with sufficient accuracy.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 816–836.]

**2. SAME—QUESTIONS FOR JURY—NEGLIGENCE OF MASTER.**

In an action by a servant for injuries received from a piece of belting striking him in the eye, whether the piece was torn from a belt because of a defective condition which could and should have been discovered by inspection *held* for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1000–1050.]

**3. SAME—RES IPSA LOQUITUR.**

The rule res ipsa loquitur does not apply to an accident simply because it is unusual and unexplained. Hence, where plaintiff was struck in the eye with a piece of belting, the fact that the accident was unusual and not likely to occur if the belting and machinery were in proper condition, except upon the intervention of some unusual force, would not in itself furnish prima facie evidence of a master's negligence, but it would be suggestive of some defect, which might be considered in connection with other testimony.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 898.]

**4. SAME—DUTY OF MASTER—SAFE MACHINERY—DUTY TO INSPECT—EXCEPTION TO RULE.**

It is the duty of a master to furnish proper belting for machinery, and a correlative and equal duty is that of maintenance, which involves proper inspection; and while it is not the master's duty to repair defects arising in the daily use of appliances, of a temporary character, not requiring the help of skilled mechanics, proper and suitable materials are supplied for repairs which may be easily made by the workmen, when a belt moving at the rate of 5,000 feet per minute passes within a half inch of a beam and girder, and the master employs a servant whose sole duty is to inspect the belts every morning and repair defects, and the others had nothing to do with the inspection, the case comes within the general rule, and the master owes the duty of inspection, and is liable for negligence of the servant selected to perform that duty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 235–242.]

Appeal from Special Term, Kings County.

Action by Fred H. Dittman against the Edison Electric Illuminating Company for personal injuries. From a judgment for defendant on a directed verdict, plaintiff appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, and MILLER, JJ.

William G. Cooke (Howard O. Wood, on the brief), for appellant. H. Snowden Marshall, for respondent.

MILLER, J. The plaintiff was employed by the defendant to oil and clean machinery. A piece of belt near which he was working was in some manner torn or thrown off, striking him in the right eye, destroying its sight. On a former appeal a judgment for the plaintiff was reversed for an error in the admission of testimony. 87 App. Div. 69, 83 N. Y. Supp. 1078. On the trial now being reviewed, the court directed a verdict for the defendant on the ground that the accident did not occur as alleged, and that the cause of the accident was unexplained. The averment of the complaint was:

"That on the day aforesaid said belt broke, and a piece thereof flew off, and struck plaintiff in the right eye."

We think the occurrence was described with sufficient accuracy; but the other point presents greater difficulty.

The belt was 38 feet long. It passed on an angle of about 45 degrees from the pulley attached to the dynamo through holes cut in the floor to the shafting below. In passing through the floor there was a clearance of a half inch between the belt and the beam under which it ran. The belt was 12 inches wide. The pulley connected with the shafting was 14 inches wide, and a half inch from it was an iron girder. The belt was a double belt, composed of pieces cemented together and shaved down at the joints or laps, so as to be of uniform thickness. The piece torn off was 20 inches long, 4 to 6 inches wide at one end, and tapered to a point. It was torn from one of the laps of the outside ply; the wide end being the end of the lap. The edges of the joints are liable to wrinkle up, and that tendency is greater if the belt is old or rotten. The plaintiff testified that a short time after the accident he found the belt, which he identified by the missing piece, among the discarded belts, and that he cut a piece from it, which was produced on the trial and which he said looked exactly as it did when he cut it out. Two witnesses called as experts testified that the leather in that piece was rotten, that the life was out of the fiber. They explained that a belt got in that condition from "neglect, not having been dressed, overheated and overloaded with machinery and age." The trial was four years after the accident, and the respondent argues that the testimony of the experts is of no probative force, because a neglect of four years was sufficient to account for the condition of the piece, but I think it is to be gathered from the testimony of said experts that they referred to a neglect to oil and properly care for the belt while in use, and it was for the jury to weigh the testimony of the plaintiff to the effect that the piece looked exactly as it did when he cut it out. The plaintiff testified that, when the accident happened, he was cleaning a belt on another machine nearby, pursuant to the direction of his foreman, and that he had not cleaned the particular belt in question. The belt was cleaned by holding a piece of waste on top of it. The defendant sought to show by admissions, which were denied by the plaintiff, that the latter was cleaning the belt, from which the piece was torn, and allowed some waste to get between the belt and the pulley, thereby deflecting the belt against the iron girder. The belt revolved at the rate of 5,000 feet a minute. I think that, viewing the evidence in the light most favorable to the plaintiff, inferences are permissible that one of the joints had become loose, that the lap had curled up, as one of the witnesses expressed it, and coming in contact with the beam in the floor was torn off, and that that resulted from a defective condition of the belt, which could and should have been discovered on inspection. The accident was unusual and not likely to occur if the belting and machinery were in proper condition, except upon the intervention of some unusual force. I do not say that the occurrence itself furnishes prima facie evidence of negligence on the part of the master, because the rule res ipsa loquitur does not apply to an accident simply because it is unusual and unexplained. But the circumstances of the accident are at least suggestive of some defect, and, when considered in connection with the other testimony in the case, they warrant the inference that the trouble was in the defective condition of the belt.

This brings us to the point which was suggested, but not decided by the court, on the former appeal. The proof is that the defendant employed a servant whose duty it was to inspect the belts every morning, and, in case of a defect, to repair it. The other workmen had nothing to do with the inspection, oiling, or repair of belts. The necessity of constant and careful inspection is obvious. One witness testified that a very careful inspection was necessary to discover any loosening of the joints. I think the master owed the duty of inspection, and that he is liable for the negligence of the servant selected to perform that duty. The duty of furnishing a proper belt in the first instance is undoubted, and a correlative and equal duty was that of maintenance, which involved proper inspection. Franck v. American Tartar Co., 91 App. Div. 571, 87 N. Y. Supp. 219; Koehler v. New York Steam Co., 183 N. Y. 1, 75 N. E. 538. The general rule is settled law, the question is as to the exception, the reason for which is well stated by Finch, J., in Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854:

> "One of those is that it is not the master's duty to repair defects arising in the daily use of the appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen, and are not of a permanent character, or requiring the help of skilled mechanics. * * * The cases cited and their doctrine appear to be founded upon what is determined to be the implied contract relation between the master and servant. Their mutual duties grow out of that relation, and change and vary as it is changed or varied by the facts which indicate and measure it. Where those facts show that, in the understanding of both parties, a class of ordinary repairs are to be made by the servants with materials furnished by the master for that express purpose; that they and he regard it as a detail of their own work; that it is something entirely within their capacity, and not dependent upon the skill of a special expert; and that the necessity springs from their daily use of the appliance, occurs at different and unknown periods in their service, and is open to their observation in the absence of the master—the inference is inevitable that the contract relation between the parties makes it a duty of the servants and a detail of their work to correct the defect when it arises with the materials furnished."

I think that the present case falls within the rule, and not the exception. It is true that the defect resulted from daily use, but that is always the case and the very reason for requiring inspection. The defect was not one which the servants themselves, if careful, necessarily discovered in the course of their work and were expected to repair. The necessity for special inspection was recognized by the master, and it selected an inspector, who alone was permitted to make repairs. The case is not at all like Cregan v. Marston, supra, in which the rope handled by the workmen was constantly wearing out, and was easily replaced by the men themselves.

I advise that the judgment be reversed.

Judgment reversed and new trial granted; costs to abide the event. All concur.