cases]. The construction, in case of ambiguity, should be most favorable to the grantee." In re Ladue, 118 N. Y. 213, 23 N. E. 465. In the case at bar the judgment in the partition suit directed the referee to sell all the property described, which description covered the land in question. He reported he had so sold all the property. Both of the referee's deeds were in the usual form, reciting all the proceedings, the judgment, sale, report of sale, etc. The deeds described the property sold as certain lots with dimensions corresponding to the numbered lots on the map and to those reported sold. Taking into consideration the proceedings in the partition suit, which are public records, and not parol evidence, it appears that the lots conveyed were the lots bounded on the lane, and so the fee went to the middle of the lane. Upon the facts before the court there is no material defect in the title to the premises in question. The title is marketable under the rules laid down in Heller v. Cohen, 154 N. Y. 306, 48 N. E. 527.

Judgment for defendant, with costs.

---

(64 App. Div. 357.)

RIKER v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

1. MASTER AND SERVANT—DANGEROUS PLACES FOR WORK—EVIDENCE.

Where an employé is injured by the fall of a telegraph pole through no fault of his own, that the pole fell because it was not placed deep enough in the earth, or the supporting earth had been worn away, establishes a prima facie case for recovery, in the absence of evidence that the defect was not discoverable by reasonable diligence.

2. SAME—FINDINGS.

Where a complaint for injuries received by the fall of a telegraph pole on which plaintiff was working alleges defendant's failure to furnish a safe place to work, in not setting the pole sufficiently in the earth, and allowing the dirt around its base to be washed away, it is not error to permit the jury to find an inadequate setting of the pole from all the evidence, including its appearance, the way it fell, and the description of the ground.

3. SAME—KNOWLEDGE OF DEFECTS.

Where a telegraph pole on which an employé was engaged fell from a a cause which could not have been reasonably anticipated, a contention that the rule as to the employer's furnishing a safe place was inapplicable, because, the line being decayed, the employé was engaged in a known dangerous work, cannot prevail.

Appeal from trial term, Orange county.

Action by Henry Riker against the New York, Ontario & Western Railway Company. From a judgment in favor of plaintiff, and an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

William Vanamee, for appellant.
William F. O'Neill, for respondent.

HIRSCHBERG, J.　The recent decision of the court of appeals in the case of McGuire v. Telephone Co., 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437, while predicated on a different state of facts, and involving a somewhat different question, would seem, in principle, to control the determination of this appeal.　It was there held that a telephone company, using as part of its permanent plant a pole not owned by it, but used by permission or license of another company, is not relieved from the duty of inspection, or from liability to a lineman in its employ who was injured in consequence of its failure to make such inspection.　In the prevailing opinion the pole was apparently regarded as a place furnished to the lineman to enable him to perform his work upon the wires, and consequently within the rule of law requiring the master to furnish his servant with a place of reasonable safety.　And the negligence of the defendant appears to have been predicated, in part, at least, upon the fact, as stated in the opinion (page 210, 167 N. Y., page 433, 60 N. E., and page 438, 52 L. R. A.), that "no inspection of the pole was shown to have been made by the defendant at any time."　In the case at bar the defendant was engaged in moving its own telegraph equipment to the opposite side of its tracks, and the plaintiff, as one of a gang of linemen engaged in the work, was sent up one of the poles, to remove the wires, as a preliminary step in the removal of the pole.　When the wires were removed, the pole fell with him, and inflicted the injuries complained of.　The evidence is undisputed that the proper manner to erect such a pole as the one in question, about 25 feet in height, was to imbed it at least 5 feet deep in the earth.　This pole stood on the side of a bank, and was only 22 inches below the soil on one side, and 18 on the other; the difference representing the slope of the bank. There was no evidence as to how deep it had been originally planted, but there was evidence that the soil about its base had been washed away by rains from time to time, and that the condition existing at the time of the accident accordingly was the result either of an original insecure mode of erection, or of the wearing away of the supporting earth by the lapse of time, or of both.　There was no evidence of any system of inspection, or of any actual inspection.　The pole was sound, and exhibited no appearance of danger.　There was evidence that the earth had been dug away from the pole by one of the plaintiff's fellow workmen before he ascended, and that he was warned of the danger, but this story was denied by the plaintiff, and rejected by the jury.

The learned trial justice submitted to the jury the questions bearing on the plaintiff's case and the defendant's duty in a charge which was quite favorable to the defendant, and in which no error appears. It was the duty of the defendant to have equipped its telegraph system, in the first instance, in such a manner that the poles would furnish a reasonably safe place for its employés to work upon in stringing, repairing, altering, or removing the wires; and it was its further duty to keep the poles in the same safe condition by the exercise of reasonable care and inspection.　Proof that on the removal of the wires one of the poles fell out of the ground, because it was not placed deep enough in the earth, or the supporting earth had

been gradually worn away, in either view, establishes a prima facie case in favor of one injured through no fault of his own, and in the absence of evidence that the defect could not have been discovered by reasonable inspection. And while, as was said in the case cited (page 212, 167 N. Y., page 434, 60 N. E., and page 438, 52 L. R. A.), "we may concede, for the argument, that the defendant might have so conducted its business as to have devolved upon the linemen all duties of inspection of whatever character," the proof fails to establish such devolution of duty with respect to the condition of the poles below the surface of the ground.

The learned counsel for the defendant urges with characteristic force and persuasiveness that the plaintiff's bill of particulars limits him to the assertion of the defendant's negligence only in respect to the washing away of the earth around the base of the pole, and that it was therefore error on the part of the trial court to instruct the jury that a recovery might be had if "the pole when erected by the defendant was unsafely put up," as well as unsafely maintained. The complaint and the bill of particulars, however, each charge both grounds of negligence. The complaint alleges that the defendant failed to furnish the plaintiff with a safe place to work, "in not setting said pole a sufficient distance in the earth," and in allowing "the dirt around the base of said pole to be washed or scraped away, so that the said pole, so improperly set, as aforesaid, did not remain in the ground a sufficient distance to keep it firm," etc. The bill of particulars specifies the same two separate and distinct grounds of negligence, and in substantially the language of the complaint. There was accordingly no error committed by the court in permitting the jury to find an inadequate setting of the pole from all the evidence in the case, including "the appearance of the pole, and the way it fell, and the description of the ground."

The appellant further claims that the line of telegraph in question was condemned, and was being removed as "old, decayed, and defective," and that, the employés being therefore engaged at the time in work of a known dangerous and unusual character, the rule as to a safe place has no application. Without devoting time to an analysis of the cases cited in support of this contention, it is sufficient to say that the claim is unsupported by the evidence. The removal of the line from one side of the road to the other would seem to have been prompted quite as much for convenience in operation as from any other motive, and while some peril was of course incident to the process, there is no suggestion, beyond the evidence heretofore referred to (which the jury did not believe), tending to indicate that any one anticipated, or reasonably should have anticipated, danger from the particular cause which occasioned the accident to the plaintiff.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.