## LA DUKE v. HUDSON RIVER TELEPHONE CO.

(Supreme Court, Appellate Division, Third Department.    January 15, 1908.)

1. MASTER AND SERVANT—WARNING AND INSTRUCTING SERVANT—EXPERIENCED EMPLOYÉ.

It is not negligence to fail to inform a servant of a danger when the servant has full knowledge of the danger himself, and it relates to the particular business in which the servant is an expert.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 308, 309.]

2. SAME—EMPLOYER'S LIABILITY ACT—DETAILS OF SUPERINTENDENCE—TESTING TELEPHONE POLE.

It is not negligence in a detail of superintendence, for which an employer is liable under the employer's liability act (Laws 1902, p. 1748, c. 600, § 1), providing for such liability for injury to an employé by reason of negligence of a person exercising superintendence, for a telephone company's foreman, when directing an experienced lineman to climb a pole and cut wires, to omit to tell the lineman to investigate as to whether detaching the wires will weaken the support of the pole, and to suggest that the pole be tested to ascertain whether it is rotten where it enters the ground, where such poles are first attacked by rot, and to inform him of the manner of making the test; such matters being as much within the knowledge of the lineman as of the foreman.

3. SAME—ACTIONS—BURDEN OF PROOF.

In an action against a telephone company for injuries to a lineman while working upon a defective telephone pole, the burden of proof rested upon plaintiff to show himself free from contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 893, 908.]

4. SAME—SUFFICIENCY OF EVIDENCE.

In an action under the employer's liability act (Laws 1902, p. 1748, c. 600, § 1) against a telephone company for injuries to a lineman by the fall of a decayed telephone pole, evidence examined, and held insufficient to establish plaintiff's freedom from contributory negligence, or to show that defendant's negligence was the cause of plaintiff's injuries.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977, 988–996.]

Cochrane, J., dissenting.

Appeal from Trial Term, Essex County.

Action by George M. La Duke against the Hudson River Telephone Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Weeds, Conway & Cotter (Thomas B. Cotter, of counsel), for appellant.

Fred M. La Duke, for respondent.

JOHN M. KELLOGG, J. The plaintiff, an experienced lineman, was engaged at Saratoga Springs with one Higgs, who was defendant's foreman in construction work, in taking down and removing certain telephone poles which were out of use. In the absence of Higgs, plaintiff climbed a pole, cut the telephone wires which connected it with the next westerly pole, the pole fell, and he was seriously injured, for which the jury gave him $5,002.54 damages. It was a chestnut pole, apparently sound above the ground, but after it had fallen it was discovered that where it entered the ground, and for a few inches below, it was rotten and punky clear through. The place where a pole enters the ground is usually the place where it is attacked by rot, and is the point of weakness to be guarded against. An inspection with a bar, a screw-driver, or other iron implement crowded into the pole below the surface of the ground would reveal whether the pole were defective or not. That is the usual and only reliable test. It is safe to say that the plaintiff and all linemen are familiar with this test, and know that, if a pole is defective, it is usually at this place. Several linemen were called by plaintiff as experts to show that such tests are usually made, and it fairly appeared that before climbing a pole the lineman, or the foreman of the men engaged in such work, usually makes such inspection. It would therefore seem that making the test, climbing the pole, and cutting the wires were details of the work, and that, if the plaintiff has suffered on account of a defect which would have been apparent upon a proper inspection, it is as much his fault as that of Higgs. It would also seem that if a lineman climbs a pole and cuts the wires which support it, and is injured by the breaking of the pole, he is not free from contributory negligence; it appearing that he made no effort and exercised no care to see whether the pole was sufficient to sustain him or not. The principal duty of a lineman is to climb poles and remove or put on wires and takes down poles. Plaintiff says:

"A lineman gets extra pay because they are required to possess the skill of a lineman, which consists of climbing the pole and removing or placing wires."

Aside from the employer's liability act (chapter 600, p. 1748, Laws 1902), it would easily be held that the plaintiff as a matter of law was guilty of contributory negligence, and had assumed the risk, and could not recover. Plaintiff and Higgs both knew that these poles were out of use, and were being taken down for that reason. They were both present when the superintendent of the company directed them to remove the poles, but he gave no directions as to the manner in which they should be removed. The pole in question leaned north towards the street at an angle of about 20 degrees. It was guyed from the south by a wire fastened upon the pole about 18 or 20 feet from the ground. There were also fastened to the pole two telephone wires running westerly along the south side of Division street, where they were fastened to an electric light pole. There was a fire-alarm wire attached to the pole, running northwesterly about 120 feet across the street, and there fastened to another pole. There were some other wires attached to the pole, which had formerly connected it with the hospital on the north side of the street, but they had been cut near

the hospital by the plaintiff, and lay upon the ground near the pole,. and furnished it no support.   Higgs and the plaintiff had worked on other poles, and arrived at this pole just before dinner.   Higgs climb-- ed the pole.   It did not appear to be weak.   It must have been evident. to a lineman that this network of wires furnished a good deal of sup- port to the pole at the time Higgs climbed it.   The supporting wires. formed a triangle radiating from the pole, and it is evident that,. when the telephone wires were cut, no further substantial support was given to the pole by the wires.   Plaintiff and Higgs went to dinner, and the plaintiff says that, while returning from dinner, Higgs told him to go to the pole and take down the two wires on the pole,. untie the fire line, and carry it up, and wait in cutting it down until he came; that he would get a rope and his belt, and guy it so as not to make so much noise when it was chopped down; that he went to the pole, and climbed it without examining to see whether it was sound. or not.   He cut the two telephone wires, the pole began to sway, and. fell over into the street with him upon it.   Higgs swears that after he climbed the pole, and they went to dinner, he told the plaintiff to go to the pole and wait for him, but not to climb it, and he would get a rope to hold it while the wires were being cut, and with which they could lower it to the ground, but that when he returned to the pole he found it down with the plaintiff injured.   The guy wire and the fire-alarm wires were found broken after the accident.

In Guilmartin v. Solvay Process Co., 189 N. Y. 490, 82 N. E. 725,. the court says:

"Therefore the question in any case brought under the statute is, not wheth- er the negligent act is a detail of the work, but whether it is a detail of the superintendent's part of the work, or of the subordinates, employés, and serv- ants."

The only act done by Higgs which can be claimed to be an act of superintendence is the direction to remove the two wires from the pole.   But he gave this direction to an experienced lineman, whose business it was to cimb poles, take off and put on wires, and take down poles.   Both the plaintiff and Higgs knew that the proper way was to cut the wires before the pole was taken down;  both knew where the weakness of the pole existed, if anywhere, and both knew the usual test and the importance of making such test before climbing the pole.   It was unnecessary for Higgs to tell the plaintiff how to cimb the pole or how the wires should be removed;  and it was also unnecessary for him to suggest that the pole be tested by the familiar test to see whether it was rotten where it entered the ground.   To be sure, in a sense, it had been tested in the presence of both by Higgs. climbing it before they went to dinner;  but at that time it was evident that the wires which were afterwards cut gave it much support.   It would seem to be unnecessary for the superintendent to tell an experi- enced lineman who was to go upon a pole and cut the wires which apparently sustained it to investigate as to whether detaching the wires would weaken the support of the pole, especially in the case of a. pole like this which was not in use and was leaning more or less.   The examination of the plaintiff shows that he was familiar with the sup- port which the wires give to a pole, and with the tension upon the

wires and with the use and purpose of a guy wire. He knew all the facts, and his experience covered the whole situation. He was not in an unusual place, in an unusual business, or dealing with things with which he was unfamiliar. He was an expert as to all the matters at hand. There is no pretext that the plaintiff understood or believed that Higgs had made a test of the pole unbeknown to him. They went to Saratoga Springs together that day or the night before, and were working there together up to the time of the accident. The pole was not in use, and there could therefore be no inference that it had been inspected, and was fit for use. Plaintiff was told what to do, and he did it in a careless manner. If the duty of testing the pole rested with the foreman of the gang, if the foreman was not present, it was clearly a duty resting upon the lineman who was to undertake the work and who knew the dangers if the test was not made. Higgs was not present at the pole when he gave the directions to the plaintiff, and therefore he was not negligent in not making an inspection. The only pretense of negligence can be that Higgs failed to direct the plaintiff to make the inspection. But, as we have seen, the manner of doing the business was well known, and the plaintiff knew as much about it as Higgs did. It is not negligence to fail to inform a servant of a danger when the servant has full knowledge of the danger himself, and it relates to the particular business in which the servant is an expert. It was not negligence to climb the pole and to cut the wires. The only negligence which can be charged is the climbing of this pole and cutting the wires without testing it to see whether it was rotted at the bottom or not, and both plaintiff and Higgs knew that that fact could not be ascertained except by making the test where the pole entered the ground. Higgs had the right to expect that the plaintiff, an experienced lineman, would not climb the pole without testing it. It might be negligence to direct an inexperienced man to climb a pole and cut wires without apprising him of the possible danger, and informing him of the test which is usually made and the manner of making it; but, where a foreman directs an experienced lineman to climb a pole and cut wires, it would be unnecessary to tell him that the appearance of the pole above the ground does not indicate its safety, as the weak point is just below the surface of the ground, and that whether the pole is defective there or not can only be ascertained by the usual test, and to inform him of the manner of making the test. Those matters are as much within the knowledge of the lineman as of the foreman, and, as between the lineman who knows all the facts and the foreman, the making of the test, the climbing of the pole, and the various acts are details of the work.

The plaintiff suffered a severe injury while in the defendant's service, but that does not make the defendant liable. He received the injury in performing his ordinary duties in a special employment, in which he was an expert. If plaintiff had been working with other men not familiar with the business, it would have been his duty to have informed them of the danger and of the test to discover the defect, or to have made the test himself. He was with Higgs, and knew that Higgs had not made the test. Both men had equal knowledge. Both men were equally skillful in the business, and, if Higgs was negli-

gent, it is difficult to see how the plaintiff can escape a like imputation. Unless the employer is the absolute guarantor and is liable for any injury which the employé receives in his service, it is difficult to see how defendant can be held liable in this case. While the rules as to contributory negligence remain in force, this verdict should not stand upon this evidence. The burden of proof rested upon the plaintiff to show absence of contributory negligence upon his part. It has never been determined that the expert woodsman who, after climbing a tree, deliberately and knowingly cuts off the limb upon which he stands, can blame the foreman who told him to climb and trim the tree. The evidence is insufficient to establish plaintiff's freedom from contributory negligence, or to show that the defendant's negligence was the cause of the plaintiff's injury.

The judgment and order should be reversed as against the evidence, and a new trial granted, with costs to the appellant to abide the event. All concur, except COCHRANE, J., who dissents.

COCHRANE, J. (dissenting). The disposition of this case I think ignores the proper theory applicable thereto. The cause of the falling of the pole was its rotten condition below the surface of the ground. Plaintiff's right to recover does not rest on the negligence of Higgs, the foreman, as is assumed in the prevailing opinion, but on the duty of the defendant to have inspected the pole. See McGuire v. Bell Telephone Company, 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437, and Riker v. New York, Ontario & Western Railway Company, 64 App. Div. 357, 72 N. Y. Supp. 168. Such duty was primarily with the defendant, and plaintiff had a right to assume that it had been performed. Defendant might have devolved that duty on Higgs or plaintiff or both, but that it did not do so is undisputed, and defendant does not and cannot claim to have done so. Hence the question of assumption of risk by plaintiff does not arise. The pole was not being removed because it was worn out, but because defendant was changing its system, and the circumstance of removal did not, therefore, put plaintiff on his guard as to the hidden danger that caused the accident.

I advise an affirmance of the judgment.

