SMITH et al. v. WINSTON et al.    (No. 297–111.)

(Supreme Court, Appellate Division, Third Department. November 11, 1914.)

Appeal from Trial Term, Ulster County.

Action by Bridget Catherine Smith and another, as administrators, etc., of Edward Smith, deceased, against James O. Winston and another, copartners doing business as Winston & Co. Judgment for plaintiffs, and defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

PER CURIAM. Judgment and order affirmed, with costs.

WOODWARD, J. I dissent. Although the complaint devotes two printed pages to detailing the alleged negligence of the defendants,

there is not a suggestion in it of the disregard of any of the matters which would bring the case within the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204). There is no suggestion of any neglect on the part of the superintendent, or other person performing the duties of a superintendent, in respect to any matters of superintendence; nor is there any claim of any defect in the ways, works, machinery, or plant of the defendants, who were engaged in reconstructing a railroad which it had been found necessary to remove from its right of way to provide for a water supply. The complaint proceeds upon the theory of common-law negligence. The allegations relate to an alleged failure on the part of the defendants to provide plaintiffs' intestate with a reasonably safe place to work, an alleged failure to promulgate and publish and enforce proper rules and regulations covering the conduct of the work, a failure to provide competent superintendents, foremen, and persons in authority over the plaintiffs' intestate and the place where he was employed to work; that plaintiffs' intestate was directed to perform work with which he was unfamiliar and not in the course of his duty which he was engaged to perform; that the defendants failed to provide proper safeguards for the plaintiffs' intestate while in the performance of his work of repairing an air hose under and between certain cars then standing upon a siding; that the defendants carelessly and negligently allowed and permitted an engine and cars to come in contact with the cars between and under which plaintiffs' intestate was working in the performance of his duty, etc.

Obviously the place provided for the plaintiffs' intestate to work was the general field of operations in the work of reconstructing this railroad, and the obligations of the defendants consisted in not adding to the known and obvious dangers of the work. The place was constantly undergoing changes; that is what the work was for. There is no evidence that the defendants had employed incompetent or improper superintendents or foremen or other persons in authority over the plaintiffs' intestate, or that there were any incompetent fellow servants of any kind. Nor is there any evidence to support the allegation that the plaintiffs' intestate was directed to do any work which was outside of the line of his duties. The evidence is that he was a man of experience in doing the work of laying and connecting water pipes, firing boilers, etc., and that upon the day of this accident he was told to go to some cars standing upon a siding a short distance away, and which was used in connection with the work, and to remove an air hose, and to place it upon another car which was being used and upon which the air hose had become defective. The work of removing this air hose required a few minutes, probably five minutes, and was of a kind with the work which the plaintiffs' intestate was in the habit of performing, and it is not claimed that he was in any manner injured by the performance of the details of this work. The injury came from the fact that plaintiffs' intestate went between the cars upon this siding and with his helper was at work upon the air hose when one of the work trains came in upon the siding to clear the main track for the passing traffic, and pushed the cars together, running one of them over him. Decedent was familiar with all of the work going on. He knew

that there were five or six work trains upon the job; that they ran at irregular times, whenever they were loaded; and that the work was being carried on at a point where it was necessary to maintain the traffic, and where the work trains were obliged to go in upon the sidings to clear the main tracks.

The evidence is wholly undisputed that, when the plaintiffs' intestate was sent to borrow the air hose from the cars on the siding, he was told to go to the end of the group of cars and to take off the hose, and that he was told to look out for the engine. This was testified to by decedent's helper, an Italian, who testified through an interpreter, but who, under the tactics of plaintiffs' attorney, was finally induced to admit that this admonition to look out for the engine was modified by a declaration that "it will be all right for a little while"; and largely upon this admission is predicated the right of the plaintiffs to recover. It is highly improbable that any man giving an admonition to "look out for the engine" would modify it by a declaration such as is claimed to have been made. The point to which plaintiffs' intestate was directed was 10 or 15 minutes' walk from the place where the order is said to have been given, and with five or six work trains moving about at all times it is not reasonable to suppose that the foreman ever gave plaintiffs' intestate a warning and then negatived it in the same breath. Men do not thus nullify their warnings in the practical everyday life which is under consideration.

But, assuming for the purposes of this discussion that he did make such a warning, with such a modification, the whole situation was as open and obvious to the intestate as to the foreman, and it took a "little while" to go to the place where this incidental work was to be performed. Plaintiffs' intestate knew the system of the work under way. He knew as well as any one that these work trains were likely at any time to drop in on any of the sidings for the purposes of the work or to clear the track for traffic; and he was supplied with a helper, who could watch the movement of trains if he was for a few moments engaged in work under a car. At any rate, this was not the negligence suggested in the complaint, for it certainly could not have been within the scope of the allegation that the defendants were negligent in furnishing incompetent superintendents, etc., for there was no incompetence involved in this transaction. The decedent was not required to do a piece of work which was beyond his capacity or power. It involved no inherent dangers which were calculated to work him harm. The danger arose, not from the character of the work he was called upon to perform, but from a cause equally known to the decedent and against which he was warned at the very time of being sent to do the work; and the fact, if it be a fact, that the foreman made an entirely foolish modification of the warning does not justify a verdict based upon the alleged incompetence of a superintendent or foreman. There was no assurance in the alleged modification that the work to be performed 15 minutes later could be done with an absolute disregard of the open and obvious dangers of the situation, and it is absurd to contend that plaintiffs' intestate was killed because of any such alleged language on the part of the foreman.

If the foreman had sent this competent man to take off an air hose and had not given any warning whatever, there would have been no breach of the master's duty. La Duke v. Hudson R. Tel. Co., 124 App. Div. 106, 108 N. Y. Supp. 189. If there was, therefore, no duty to give a warning of known and obvious dangers, the fact that the intelligent warning first given was modified by a qualification for which no intelligent justification can be suggested would not warrant the plaintiffs' intestate in closing his eyes to dangers which, in the necessary conduct of the work, were always present. He must be deemed to have accepted these risks, for, while it is true that the plaintiffs set out in their complaint the giving of the notice required by the Employers' Liability Act, there is not a thing in the pleadings which justifies the notice. The negligence suggested and relied upon is all common-law negligence, and the case must be governed by the facts pleaded, not by the notice which was given in an effort to gain an advantage over the defendants. It is, no doubt, the rule that, where a cause of action is stated in a complaint sufficient at common law, allegations as to notice required by the statute will, where they are not proved, be regarded as surplusage. Holm v. Empire Hardware Co., 102 App. Div. 505, 92 N. Y. Supp. 914. But no case has ever yet held that the giving of notice entitled the plaintiff to the benefits of the special rules of the statute, where the cause of action itself consisted of alleged violations of common-law duties outside of the statute.

In the present case the learned trial court charged the jury that the question of contributory negligence was, under the recent amendment of the Code of Civil Procedure, a matter of affirmative defense, to be pleaded and proved by the defendant. It is not disputed that the accident occurred prior to the amendment, and it seems reasonably clear that the substantive law of the case could not be changed after the accident. A mere rule of evidence may, under some circumstances, be changed; but here the rights of the defendants became fixed on the date of the accident, and they ought not to be subjected to change after that time. On the day of the accident the rule of law required the plaintiffs to establish, as a part of their cause of action, freedom from contributory negligence; and that could not properly be changed by giving the plaintiffs, in effect, a presumption of freedom from contributory negligence. That would be taking the rights of the defendants without due process of law.

But it is suggested that this action was brought under the Employers' Liability Act, and that the correct rule was thus laid down, even though it was erroneous as to the common-law action. This, however, assumes that there was a cause of action under the statute, and the pleadings and evidence show that no such action was tried. The action was strictly a common-law action. It was such in its pleadings and its proofs, so far as there were any legitimate proofs, and the requirement that judgments should rest upon the pleadings and proofs is still in vogue.

I think the charge of the court presents reversible error, and the considerations of justice and sound public policy demand that the judgment and order appealed from be reversed.