MARTIN MURPHY, Respondent, *v.* ROCHESTER TELEPHONE COMPANY and Another, Appellants.

Fourth Department, March 12, 1924.

Negligence — action for injuries suffered by plaintiff when telephone pole on which he was working broke and fell — contract between plaintiff's employer and defendants required employer to give notice if it desired to use pole — notice was not given — practical construction of contract shows that notice was considered sufficient if given after pole was used — plaintiff was invitee — defendants were negligent in not maintaining pole in safe condition — contributory negligence of plaintiff based on his failure to inspect pole is for jury.

In an action to recover damages for injuries suffered by the plaintiff, a lineman, when a pole owned by the defendants upon which he was at work broke and fell, it appears that plaintiff's employer and the defendants agreed by a written contract that each might use the telephone or electric light poles of the other upon giving written notice of the desire to do so and paying the proportionate part of the value of the pole; that the pole which broke and fell while plaintiff was working thereon belonged to the defendants and written notice had not been given by plaintiff's employer that it desired to use that pole; that a custom had grown up whereby, when one of the parties desired to acquire joint ownership with the others, it made use of the pole and gave notice afterwards, and that a fellow-employee of the plaintiff inspected the pole in the plaintiff's presence and worked thereon before the plaintiff.

*Held,* that under the practical construction given to the contract between the defendants and the plaintiff's employer, it was not necessary for plaintiff's employer to notify the defendants before it used the pole, and, therefore, the plaintiff when he made use of the pole in question without notice was an invitee of the defendants.

The defendants, under the circumstances, were bound to anticipate the use that the plaintiff made of the pole and are liable for their failure to make proper inspection and repair, since it was their duty to provide a sound pole.

The question of the plaintiff's contributory negligence in not making an inspection of the pole before climbing to the top is for the jury, since the evidence shows that plaintiff's fellow-workman tested the pole for rottenness and after making a test climbed to the top thereof and worked in safety just prior to the plaintiff's injury.

APPEAL by the defendants, Rochester Telephone Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 29th day of May, 1923, upon the verdict of a jury for $10,400, and also from an order entered in said clerk's office on the 14th day of June, 1923, denying defendants' motion for a new trial made upon the minutes.

*Raines & Raines [Eugene Raines* of counsel], for the appellant Rochester Telephone Company.

*John A. Barhite,* for the appellant New York Telephone Company.

*Merwin Morehouse,* for the respondent.

DAVIS, J.:

The plaintiff, a lineman, was injured when a pole owned by defendants upon which he was at work broke and fell. He has a judgment for damages against both defendants.

The plaintiff was employed by the Rochester Gas and Electric Corporation, hereinafter referred to as the Gas Corporation. Prior to 1917 the pole was owned and maintained jointly by said corporation and the two defendants pursuant to a contract, the material terms of which will be presently stated. In 1917 this pole was broken off at the ground line. The part apparently decayed was cut off and the pole was then reset by defendants, the Gas Corporation having given notice that it would not join in further use or maintenance of the pole.

On April 13, 1921, the plaintiff as foreman with two assistants was sent by his employer to attach a crossarm and wires to the pole. He was an experienced lineman, and had general instructions to make inspection of poles before climbing. There is dispute as to the nature of the inspection required. Covert, one of the men, took a small screwdriver and made tests as to the soundness of the pole at the base. This was in the presence of plaintiff, but he did not testify that he saw it. Covert then climbed to the top of the pole, carrying a heavy crossarm, and did some work under plaintiff's direction. Later without making further inspection, plaintiff started to climb the pole. When up a few feet he shook it to determine its soundness. Apparently satisfied, he proceeded and attached himself to the top of the pole with his safety belt and commenced work. The pole shortly thereafter broke and fell.

It is undisputed that the pole was in such a decayed condition as to be unsafe. This could have been discovered by proper inspection. The defendants instructed their men to make inspection before climbing. It does not appear when, if ever, any actual inspection had been made.

Fourth Department, March, 1924.                    [Vol. 208

Defendants in appealing assert that they owed no obligation of care to plaintiff other than to refrain from inflicting a willful or wanton injury upon him.  The trial court charged the jury that the plaintiff could not recover if he was a trespasser or licensee, but only if he was on the pole by invitation and as a matter of right.  The defendants also claim that the plaintiff was guilty of contributory negligence as a matter of law.

These questions are based primarily on a contract entered into between the defendants and plaintiff's employer on June 8, 1916, relative to joint ownership, use and maintenance of poles.  The parts material here are, in substance, that any party might acquire joint ownership in any pole in which it theretofore had no right, by giving written notice to the other parties of its desire to acquire such ownership, and paying its proportionate part of the value of said pole; and the privilege of acquiring ownership in new poles or replacements under prescribed rules; and that a joint owner might terminate its ownership by giving six months' notice in writing and by removing its attachments, and thereupon ceasing to be liable for any obligation or charge as to such pole.  There was a further provision that the failure of any party to enforce the terms of the agreement, or its waiver in any instance, should not be regarded as a general waiver.

The Gas Corporation had given no written notice of its desire to resume joint ownership at the time it directed plaintiff to attach its wires to the pole.  Under the strict terms of the contract it probably had no right on the pole.  The trial court charged properly that the plaintiff had no better right than his employer. The plaintiff contends, however, that the strict terms of the contract were not in force; and that the provisions for the giving of written notice before acquiring the right to use were immaterial and not vital elements of the contract necessary only for proper bookkeeping so that payment might be adjusted.  He established by substantial evidence that a custom had grown up whereby when one party desired to acquire joint ownership with the others, it made use of the pole and gave notice afterward, and the accounts were then adjusted and paid, and the agreement thus ratified. This evidence was received on the theory that it was a practical construction of the contract by the parties themselves, and the jury were instructed that if they found the parties had adopted this practical construction of their rights and obligations under the contract, then they might determine that the plaintiff was on the pole by invitation and by right.

It is immaterial whether we regard the situation in the light of practical construction (*Carthage Tissue Paper Mills* v. *Village of*

*Carthage,* 200 N. Y. 1), waiver (*Adams* v. *Roscoe Lumber Co.,* 159 N. Y. 176) or a modification of the original agreement, evidenced by a course of conduct assented to by all parties interested.   (*Walker* v. *Millard,* 29 N. Y. 375; *Goldman* v. *Ehrenreich,* 33 Misc. Rep. 433; *Daimler Import Co.* v. *Daimler Motoren Gesellschaft,* 222 Fed. Rep. 259; *Montgomery Traction Co.* v. *Montgomery L. & W. P. Co.,* 229 id. 672.)   It may readily be seen that in the exigencies of the business, the matter of prior notice and resulting delay would present objections in practical operation, and that a course of conduct might arise and continue whereby the pole could be immediately utilized and notice then given so that proper book-keeping entries could be made and adjustments follow.   The defendants seem to have adopted this view of it.   They replaced the broken pole, and the Gas Corporation used it without giving written notice.   Defendants then rendered a bill for the proportionate share which the Gas Corporation paid.

The jury has found from ample evidence that the modified agreement was in force at the time of the accident.   There was some evidence, also, that verbal notice of intention to use the pole was given before the accident.   Without discrediting that evidence, we think it unnecessary to rely upon it.

Each owner, irrespective of any contractual obligation, was required to erect the pole and exercise reasonable care and inspection to maintain it in a safe and proper condition for employees to work upon.   (*Riker* v. *N. Y., O. & W. R. Co.,* 64 App. Div. 357.) If their negligent acts concurred in contributing to the accident, they were all jointly and severally liable.   (*Sweet* v. *Perkins,* 196 N. Y. 482; *Sider* v. *General Electric Co.,* 203 App. Div. 443; *Wanamaker* v. *Otis Elevator Co.,* 228 N. Y. 192, 200; *Jerome* v. *New York Railways Co.,* 190 App. Div. 311.)   The plaintiff could not sue his employer (Workmen's Compensation Law of 1914, § 11, as amd. by Laws of 1916, chap. 622) but might elect to sue any third party liable.   (Id. § 29, as amd. by Laws of 1917, chap. 705.) While these provisions were re-enacted by the Workmen's Compensation Law of 1922 (§§ 11, 29), the statute in force at the time of the accident controls.   (See *Rugg* v. *Norwich Hospital Association,* 205 App. Div. 174, 176.)

We think that under the contract the owners who would receive proportionate compensation from the Gas Corporation, owed the duty of furnishing a sound pole.   They reaped a benefit under the contract by relief from a portion of the expense of construction and maintenance.   Even though this obligation might not arise in the express terms of the contract, there was such primary duty. It is analogous to the obligation of an owner or another contractor

who erects a scaffold and must anticipate that it will be used by some one not in his employ (*Coughtry* v. *Globe Woolen Co.,* 56 N. Y. 124; *Quigley* v. *Thatcher,* 207 id. 66; *Huston* v. *Dobson,* 138 App. Div. 810) or who furnishes an appliance used by the servant of another which is unsafe. (*Pedersin* v. *Michel Brewing Co.,* 156 App. Div. 383.) The principle has been thus applied in maritime law where a co-owner has been held liable though the negligent act was entirely that of the other owner (*Scarff* v. *Metcalf,* 107 N. Y. 211); and where one joint operator of a terminal is sued at common law by the employee of the other owner for breach of duty toward him while there in the business of the common enterprise. (*Cott* v. *Erie R. R. Co.,* 231 N. Y. 67.) Other cases in which parties are held liable for negligence to persons not their employees under a similar principle are *Smith* v. *Brady* (136 App. Div. 665); *Murphy* v. *Perlstein* (73 id. 256); *Ferris* v. *Aldrich* (12 N. Y. Supp. 482); *Warner* v. *Lucey* (207 App. Div. 241). In *McGuire* v. *Bell Telephone Co.* (167 N. Y. 208) it is said that the defendant was bound both as to third parties and as to its own workmen to erect and maintain a reasonably safe structure.

The origin of the doctrine that a person may be liable for his negligence causing injury to another not his employee or sustaining any contractual relation to him, is somewhat obscure. Perhaps it may not be traced to any particular duty which sound reason imposes upon the owner. It may rest upon the " great principle of social duty " adopted " from general considerations of policy and security," or upon " historical tradition." (*Farwell* v. *Boston · & Worcester R. R. Corporation,* 4 Metc. 49; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 221.) Whatever may be its origin and its basis, it is a doctrine which has become established as the cases just cited illustrate, and which we recognize and give effect here.

We reach the conclusion that the plaintiff went upon the pole as a matter of right. His relation to defendants was in the nature of an invitee. They were bound to anticipate such use as he made of the pole, and were liable for their failure to make proper inspection and repair.

Generally speaking, the duty to inspect is one that cannot be delegated so as to relieve the master from responsibility. (*Koehler* v. *New York Steam Co.,* 183 N. Y. 1; *McGuire* v. *Bell Telephone Co., supra; Franck* v. *American Tartar Co.,* 91 App. Div. 571.) No doubt before climbing a pole a lineman owes the duty to his own safety to make some inspection. (*La Duke* v. *Hudson River Tel. Co.,* 124 App. Div. 106.) He cannot in the ordinary performance of his work make the thorough inspection which is the master's duty, nor is he required so to do. Even if defendants could avail

themselves of the defense that plaintiff failed to obey his master's instructions to inspect, which question we do not decide, plaintiff, under the circumstances, was not guilty of contributory negligence as a matter of law.   Recognized tests were made by plaintiff or in his presence, and he had seen a fellow-workman climb the pole and work on it with safety.   It was a question of fact as to whether the plaintiff had exercised ordinary prudence.   (*Rowley* v. *American Ill. Co.*, 83 App. Div. 609.)

The charge of the learned trial court was a very fair, clear and specific statement of the claims of the parties and the principles of law applicable.   The verdict while large was not excessive in view of the elements of damage, including permanent deformity.

The judgment and order appealed from should be affirmed.

All concur.

Judgment and order affirmed, with costs.