Sean K. O'CONNOR, Plaintiff,

v.

The DIAMOND STATE TELEPHONE COMPANY, a corporation of the State of Delaware, Storer Cable Communications, Inc., a corporation of the State of Delaware, General Television, Inc., a corporation of the State of Delaware, and General Television of Delaware, Inc., a corporation of the State of Delaware, Defendants.

Superior Court of Delaware,
Kent County.
Submitted: Sept. 10, 1985.
Decided: Sept. 12, 1985.

James T. Vaughn, Jr., Vaughn & Vaughn, Dover, for plaintiff.

Douglas B. Catts, Schmittinger & Rodriguez, P.A., Dover, for defendants.

BUSH, Judge.

This is the Court's decision on defendants' motion for summary judgment in an action for personal injuries sustained in a work-related accident. The issues presented are whether the facts, when viewed in the light most favorable to plaintiff, prove as a matter of law that (1) the defendants owed no duty to the plaintiff, and (2) the plaintiff was contributorily negligent.

Plaintiff was a lineman employed by Project Packaging, Inc. (Project). Pursuant to a contract with Storer Cable Communications d/b/a General Television of Delaware (Storer), Project agreed to install cable communication lines in the Dover area. Project was to hang the lines on poles owned by the Diamond State Telephone Company (Diamond State). Diamond State had earlier granted a license to General Television, Inc. (GTV) to attach lines to its poles. For the purpose of this motion, defendants treat Storer and GTV as a single entity; the Court will, therefore, refer to all defendants except Diamond State as Storer.

On May 26, 1981, plaintiff was attaching a line to a row of poles according to the contract between his employer and Storer. The accident occurred as plaintiff was gaffing up a pole which was covered with poison ivy vines some six or seven inches thick. One three-inch gaff or spike was attached to each of plaintiff's shoes. Plaintiff believes that when he was approximately eighteen feet up the pole, the gaff in his left shoe must have been in a vine, rather than in the pole, and the vine broke, causing his fall.

Plaintiff testified he had never encountered a pole covered with vegetation. He mentioned the condition of the pole to his foreman who told him to climb the pole anyway, because Project was pressed for time. Even if he had not been instructed to do so, plaintiff said he would have climbed the pole. It is plaintiff's position that he tried to make sure that he had a firm footing each time he made a step and that he was not "planning" on falling. He could not see his feet for the vegetation. Plaintiff explained that his employer had a bucket truck which was used when "you were in a debris of bushes and stuff like that or the pole's a little bit over the highway." The bucket truck was not on the job site that day.

Plaintiff filed suit alleging that defendants breached their duty to provide plaintiff a safe place to work. Defendants filed this motion asserting that they owed no duty to plaintiff, an employee of an independent contractor, and that plaintiff was contributorily negligent as a matter of law.

Where no duty exists, as here, the Court need not reach the issues of defendants' negligence or plaintiff's contributory negligence.

The question of duty is traditionally an issue for the court. W. Prosser & W. Keeton, *The Law of Torts* § 37 (5th ed. 1984). Duty depends, in part, on the legal relationship between the parties. The relationship between defendants and plaintiff can best be described in the context of premises-liability law. In addition, contractual obligations, though not conclusive, do bear on the principal issues in this case: control of the work and workplace and plaintiff's status as a business invitee.

Diamond State is the owner of the pole. The pole is employee's place of work. 74 Am.Jur.2d *Telecommunications* § 45 (1974). In granting Storer attachment privileges, Diamond State, among other terms, reserved the right to inspect each installation subsequent to the attachment of licensee's facilities, and to demand reimbursement for the expense of the inspections. Diamond State also reserved the right to maintain its poles and to operate its facilities thereon in such a manner as will best enable it to fulfill its own service requirements.

Under the license agreement between Storer and Diamond State, Storer had possession of the pole for the purpose of attaching its cables. When it engaged Project, an independent contractor, to do the actual installation, Storer acted as a general contractor and employer of Project, giving possession of the pole to Project for the performance of the work. According to the contract between Storer and Project, Project warranted it had experience in such construction and installation; that it would supply the tools, material, labor and equipment and take charge of all hiring, directing, supervising and paying its employees and would be solely responsible for all federal and state income taxes and withholding taxes, workmen's compensation, and such. Furthermore, Project agreed to take all necessary precautions in preventing accidents or injuries to persons or property in or about the work. Storer was free to inspect the work at all times.

Storer and Project agreed that Project was an independent contractor. As such, Project and its employees, including plaintiff, were business invitees as to those in possession of the pole. *See e.g., Fahey v. Sayer*, Del.Supr., 106 A.2d 513 (1954).

■ Control of the work and work premises is crucial to a determination of defendants' duty to plaintiff. The applicable law is that neither an owner nor general contractor has a duty to protect an independent contractor's employee from hazards created by the doing of the contract work or the condition of the premises or the manner in which the work is performed unless the owner or general contractor retains active control over the manner in which the work is carried out and the methods used. *Seeney v. Dover Country Club Apartments, Inc.*, Del.Super., 318 A.2d 619 (1974); *Williams v. Cantera*, Del.Super., 274 A.2d 698 (1971).

> This concept of active control, though an elastic one, is ordinarily not inferred from the mere retention by the owner or general contractor of a right to inspect the work of an independent contractor or to exercise general superintendence over the work in order to assure complicity with the contract terms. (citations omitted) Instead, the right to control must go directly to the manner or methods used by the independent contractor in his performance of the delegated tasks.

*Seeney*, 318 A.2d at 621.

■ Storer is somewhat comparable to the general contractor in *Seeney, supra*, at least to the extent that Storer hired the independent contractor, Project, who employed plaintiff at the time of his injury. Even without actual ownership rights in the premises, one in possession of property, even for a limited permissive use may have a duty to invitees depending on the possessor's control of the property. *See* 62 Am. Jr.2d *Premises Liability* § 12 (1972). In

*Seeney,* the court found that the control retained by the owner-general contractor over its independent contractor was not legally sufficient to impose a duty on the employee of the independent contractor even though the owner-general contractor had a field supervisor and field office on the job site. Compared to the defendant in *Seeney,* Storer retained no control over the manner or method of work. Storer's right to inspect was not an active assumption of control, as Storer's representative was not on the job site and plaintiff testified he never saw a Storer representative. The only control Storer did retain was that which would ensure that the end result conformed with the contract.

Diamond State had the most minimal, if any, control over the work and workplace and certainly none over the manner or method of the independent contractor's work. Unlike the owner-general contractor in *Seeney,* Diamond State did not employ Storer to do work for Diamond State's benefit, and Diamond State had no connection with Project. It merely permitted Storer the use of its pole for Storer's own purposes. Clearly Diamond State had no interest in or exercised no control over Storer's operation except to ensure that Storer's use of the poles did not damage Diamond State's facilities or interfere with its own services or those of other licensees of Diamond State.

Gaining access to the top of the pole was necessarily incidental to attaching the lines and was a detail of the work Project contracted to do. How to reach the top of the pole, whether to gaff over the vines or clear the vines or use the bucket truck, was a decision solely under Project's control. As an experienced contractor who agreed to supply all labor and equipment and who agreed to take all necessary precautions for its employees, Project should have been prepared for such a contingency as vines on a pole. *See* Restatement (Second) of Torts § 413 (1965). Indeed, one of the purposes of the bucket truck was to reach the top of poles which were inaccessible because of brush and bushes surrounding the bottom of the pole. Surely if neither the owner of the pole nor the general contractor was expected to provide clear access to the top of those poles surrounded by brush and bushes, then the condition of vines growing up a pole should not have presented a unique problem which shifted the responsibility to either the owner or general contractor.

Plaintiff points to *Rabar v. E.I. duPont de Nemours & Co.,* Del.Super., 415 A.2d 499 (1980), for the rule that those who control the work areas are jointly responsible for safety implementation along with those who control the workers. The "work-area-control test" announced in *Rabar* was applied to a "classic multi-employer situation, i.e., a large construction site where at any given time numerous independent contractor employers may have several hundred or thousand employees working in overlapping areas." *Id.* at 504. Aside from the obviously distinguishable work setting, neither defendant in the instant case was an "employer" who had control over plaintiff, and neither defendant controlled part of the work or retained possessory control over the work premises during the work. *See id.* at 506. As pointed out by Judge Taylor, the work-area-control test is consistent with general common law principles vis-a-vis landowners and is not a radical departure from those rules. *Id.*

■ In addition to the control tests, plaintiff contends liability may be premised on plaintiff's position as a business invitee. The applicable rule is stated in *Seeney,* 318 A.2d at 622.

> [T]he possessor of land owes to the independent contractor and his employees a duty to maintain the premises in a reasonably safe condition and to warn them of all defects of which he knows or has reason to know. (citations omitted) These duties, however, are not imposed upon the possessor of land where the contractor and the possessor are equally knowledgeable of the defective condi-

tions existing on the property (citations omitted)...

In granting summary judgment to the defendant railroad in *Niblett v. Pennsylvania Railroad Company*, Del.Super., 158 A.2d 580, 582 (1960), the court addressed the issue of a dangerous condition causing harm to a business invitee: "[I]f a danger is so apparent that the invitee can reasonably be expected to notice and protect against it, the condition itself constitutes adequate warning."

There is no material question of fact whether the condition was apparent or whether plaintiff or his employer had knowledge of the condition. Plaintiff and his foreman discussed the condition of the vines on the pole. Since plaintiff and Project had knowledge of the condition at least equal to that of defendants, then no duty is imposed on defendants. If plaintiff is hurt by a defect he knows about, defendants' duty has been discharged or made unnecessary. It is the Court's opinion that the particular nature of the condition and the contractual relationship of the parties was such that regardless of the comparative knowledge of the parties, the duty as to the vines was always with plaintiff's employer.

The result here may have been different had the defect in the pole been latent or hidden, such as a rotten cross-arm used by plaintiff for support, *Rose v. Missouri District Telegraph Co.*, Mo.Supr., 328 Mo. 1009, 43 S.W.2d 562 (1931); or a loose pole step, *Manning v. New York Telephone Company*, 2d Cir., 388 F.2d 910 (1968); or an internally decayed pole, *Murphy v. Rochester Telephone Co.*, N.Y.App.Div., 208 App.Div. 392, 203 N.Y.S. 669 (1924). *Cf. La Duke v. Hudson River Telephone Co.*, N.Y.App.Div., 124 App.Div. 106, 108 N.Y.S. 189 (1908) (defendant is not liable since plaintiff is an experienced lineman, and inspection of the pole was a detail of his work); *Chesapeake & Potomac Telephone Co. of Virginia v. Bullock*, Va.Supr. Ct.App., 182 Va. 440, 29 S.E.2d 228 (1944) (joint-possessor is not liable since a "glance" would have informed plaintiff that cable was not attached and would not support him).

Under the clear record in this case, there are no factual questions which would preclude summary judgment for defendants. As a matter of law defendants had no duty to plaintiff in relation to the vine condition on the pole because defendants neither retained or assumed sufficient control over the work or workplace and the plaintiff and his employer had equal, if not superior, knowledge of the condition. Judgment is granted in favor of defendants.

IT IS SO ORDERED.