**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

ATLANTIC STATES  )
INSURANCE COMPANY  )
a/s/o MICHELLE FILIPEK,  )
                                 )
       Plaintiff,  )
                                 )
       v.  )        C.A. No. CPU4-14-002139
                                 )
CHARLES C. CONNELL COMPANY,  )
                                 )
       Defendant.  )
                                 )

Submitted: May 4, 2015
Decided: June 4, 2015

Arthur D. Kuhl, Esquire
Reger, Rizzo & Darnall, LLP
Brandywine Plaza East
1523 Concord Pike, Suite 200
Newport, DE 19803
  *Attorney for Plaintiff*

Gary R. Spritz, Esquire
3511 Silverside Road, Suite 211
Wilson Building
Wilmington, DE 19810
  *Attorney for Defendant*

**<u>DECISION AFTER TRIAL</u>**

**RENNIE, J.**

Plaintiff Atlantic States Insurance Company ("Plaintiff"), as subrogee of Michelle Filipek ("Filipek"), filed this negligence action against Defendant Charles C. Connell Company ("Defendant"), which is owned by Kelley Connell ("Connell"). Plaintiff seeks to recover damages in connection with roofing restoration work performed by Defendant on Filipek's house. Trial took place on May 4, 2015. The Court heard testimony from five witnesses,[1] and received documentary evidence from both parties. At the conclusion of trial, the Court reserved its decision. This is the Court's decision after trial.

## FACTUAL BACKGROUND

The house in question is a split-level with two flat, non-peaked roofs. The upper roof covers the second floor of the house, which includes a master bedroom, Filipek's daughter's room (the "girl's room"), Filipek's son's room (the "boy's room"), and a storage room.

In March 2012, Edward "Jimmy" Smith ("Smith"), who is employed by Defendant as a roofer, was working on a house in Filipek's neighborhood when Filipek approached him about her roof. Smith went to Filipek's home and looked at the ceiling on the second floor in the master bedroom. Smith saw numerous, circular water marks and then examined the roof. Smith found that the roof was supported with plywood that was "spongy" and delaminated and determined that the roof had been leaking for a long time. Smith spoke with Filipek and explained that her "roof had to be torn off" and that the "plywood [had to be] replaced."

Smith testified that, although the upper roof was in worse condition than the lower roof, Filipek only wanted to repair the lower roof because the damage to the lower roof was visible when looking directly at the house. On March 6, 2012, Defendant mailed Filipek a proposal that described the repairs that needed to be completed to the lower roof as well as an estimate of the

---

[1] Michelle Filipek, John Fallon, and Kelley Connell testified during Plaintiff's case-in-chief. John Fallon and Kelley Connell also testified during Defendant's case-in-chief, along with Fernando Corello and Edward "Jimmy" Smith.

2

cost.[2]  In September 2012, Filipek accepted Defendant's proposal.[3]  Fernando Corello ("Corello"), the subcontractor hired by Defendant, repaired the lower roof in one day, with the assistance of three other workers.

Smith testified that, he visited Filipek's home on a couple of different occasions in order to inspect both the lower and upper roofs.  At one of these inspections, he saw that there was a leak coming from a water pipe in the upper roof, so he repaired it as a courtesy.[4]

In September 2013, one year after Defendant repaired the lower roof, Filipek called Smith, and hired Defendant to replace the upper roof.[5]  Defendant subcontracted with Corello again, and Corello and one other worker began repairing the roof on October 9, 2013 at 7:30 a.m.[6]  Smith also was on-site, and brought the materials that Corello needed to make the repairs. Corello testified that after he removed the shingles, he saw that the underlying plywood "was in bad condition and had holes" and saw that the plywood was "broken . . . [and] had leakage." The entire upper roof had approximately thirty to thirty-four sheets of plywood supporting it, and Corello replaced twenty-three sheets.  At the end of the first day, Corello re-shingled approximately 75-90% of the upper roof, and covered the section that had not been re-shingled with paper and a tarp.[7]

The parties dispute whether Defendant completed the roof repairs the following day, on October 10, 2013, or whether Defendant had completed the repairs at a later date due to a

---

[2] Def. Ex. 1.

[3] Def. Ex. 2.

[4] Specifically, Smith testified that he "fixed it free of charge."

[5] See Def. Ex. 5. Moreover, Smith and Connell both testified that Filipek had said that she needed to "bite the bullet and get [the roof] done." Connell also testified that Filipek said that the upper roof had been leaking and stated, "I can't take it anymore."

[6] Although there was some discrepancy as to when Defendant first began repairing the roof, by the end of the trial, the parties agreed that the work began on October 9, 2013.

[7] Specifically, Corello testified that he covered the space with paper, and placed a 2 x 4 piece of wood and bundles of shingles on top of the paper to ensure that the paper would not move. Then, Corello placed a tarp over that same area and nailed the tarp to the part of the roof that was shingled.

3

rainstorm.[8] Nonetheless, on the day in which Corello finished the roofing work, he started at 7:30 a.m. Corello testified that when he removed the tarp, there was no water present, nor were there any holes in the tarp. Corello finished re-shingling the rest of the roof, and completed the repairs around 2:00 – 3:00 p.m.

On October 13, 2013, at approximately 1:30 p.m., Filipek called Defendant and indicated that there was water damage to the ceiling of multiple rooms on the second floor.[9] Filipek testified that she called Defendant when she saw the water damage. The next day, Smith and Connell went to Filipek's home to inspect the roof and the water damage. Both Smith and Connell testified that the water marks that they observed were old stains that Smith had previously observed in March 2012.

On October 18, 2013, Filipek reported the water damage and submitted an insurance claim to Plaintiff. John Fallon ("Fallon") was assigned to the claim.[10] On October 21, 2013, Fallon inspected Filipek's home. Fallon testified that he observed new water damage on the ceilings of the boy's room, girl's room, and storage room, and old stains on the ceiling of the

---

[8] Plaintiff's Exhibit 4 is a copy of the Daily Precipitation and Temperature Summary from weathersource for October 8, 2013 through October 14, 2013. The summary indicated that there was precipitation on the following days: October 9, 2013 – trace of rain at 11:01p.m.; October 10, 2013 – .57 inches starting at 2:00a.m.; October 11, 2013 – .93 inches starting at 12:08 a.m; October 12, 2013 – .01 inches; October 13, 2013 – no precipitation; October 14, 2013 – no precipitation.

[9] Defendant played a recording of the voicemail that Filipek left: "This is Michele at 1320 Quincy Drive... I wanted to call and let you guys know. . . um, I'm not sure if you guys filled in the roof or not, but, the one bedroom, the girl's bedroom, the ceiling in there is probably the only ceiling that didn't have any water marks on it. Any, actually. And, I hate to report that a lot of water got in during the storm. The ceilings are all wet and [we should] have a conversation about it." When Filipek testified, she stated that there was water damage to the ceilings in all of the rooms on the second floor with the exception of the master bedroom. Filipek acknowledged that her testimony contradicts what she stated in her voicemail to Defendant, and testified that she misspoke when leaving the voicemail. Nonetheless, the Court finds this discrepancy to be inconsequential after listening to the voicemail and considering the evidence in its entirety. Specifically, Plaintiff presented evidence of new water damage to the girl's room, boy's room, and storage room through Pl. Ex. 2 and through testimony of its claims representative, John Fallon. Moreover, it is clear that when Filipek left the voicemail for Defendant, she was disappointed and distraught. The Court finds that the clear weight of the evidence demonstrates that there was new water damage to Filipek's home.

[10] Fallon works as a Property Field Claims Representative for Donegal Insurance Company ("Donegal"), which is the parent company of Plaintiff. Fallon testified that Donegal assigned him to Filipek's claim.

master bedroom. Fallon took measurements and pictures of the home and water damage.[11] He also spoke with the ServePro representative, who was also inspecting the damage and attempting to remove the excess water and moisture.[12] After completing the inspection, Fallon drafted an estimate to repair the damage, which laid out the costs for the remediation services[13] and the actual cost to make repairs.[14] The total amount that Plaintiff paid Filipek for these services was $2,665.51.[15]

## PARTIES' CONTENTIONS

Plaintiff contends that Defendant is liable for the water damage because Defendant was negligent in repairing the upper roof. Specifically, Plaintiff contends that although Defendant began working on the roof on October 9, 2013, it did not finish the repairs until October 12, 2013 because it rained during the intervening days. Plaintiff also contends that Corello did not properly secure the tarp on the upper roof after the first day, which is the reason why water leaked into the house and caused damages to Filipek's ceilings. Moreover, Plaintiff argues that Defendant would have been able to complete all of the work on the first day had there been more than two people working on the roof. Plaintiff contends that because of Defendant's negligence, Defendant owes a total of $2,915.51 for the water damage to Filipek's house.

Defendant maintains that it was not negligent in repairing the upper roof. Defendant claims that it finished the work on October 10, 2013, before the rainstorm passed through. Defendant also contends that Corello properly secured the upper roof with the tarp, and argues that there were no holes in the tarp or issues with the tarp after completing the repairs for

---

[11] Pl. Ex. 3

[12] Filipek also testified that she saw the ServePro representative use "three big machines to get the moisture out."

[13] Pl. Ex. 2. The description of the remediation services include fees for hauling and dumping debris, and tearing out and bagging wet insulation and wet drywall in the girl's room, boy's room, and storage room.

[14] Pl. Ex. 2. The description of the repairs included installing insulation, hanging and taping drywall, and painting in the girl's room, boy's room, and storage room.

[15] Pl. Ex. 2. This number represents the total estimate amount ($2,915.51) minus Filipek's deductible ($250.00).

Filipek's roof. Moreover, Defendant contends that having two people working on the roof was sufficient, and that it did not guarantee that the roof restoration would be completed in one day. Ultimately, Defendant contends that the water damage to Filipek's home was pre-existing and resulted from Filipek's failure to have the roof fixed in March 2012, when Defendant initially inspected the roof and found that it needed to be replaced.

## DISCUSSION

In order to prevail on a claim for negligence, a plaintiff must prove, by a preponderance of the evidence, that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) the defendant's breach proximately caused the plaintiff's harm, and; (4) the plaintiff suffered damages.[16]

"The existence of a duty "depends, in part on the legal relationship between the parties'" which takes the "'contractual obligations' existing between the parties" into consideration.[17] Filipek and Defendant contracted for Defendant to perform roofing restoration to Filipek's upper roof. Plaintiff, as subrogee of Filipek, "stands in the shoes" of Filipek, and thus may recover for any loss that it insured and reimbursed, and was caused by Defendant.[18] The contract between Filipek and Defendant required Defendant to perform the roofing work in a workmanlike manner and provided a warranty on labor and materials.[19] The standard for whether the contractor performed the work under the contract in a good and workmanlike manner is "whether [he]

---

[16] *Anctil v. McGrath*, 2012 WL 4789688, at *4 (Del. Com. Pl. July 31, 2012) (*citing New Haverford P'Ship v. Stroot*, 77 A.2d 792, 798 (Del. 2001)).

[17] *Butler v. Robbins*, 2013 WL 3717730, at *3 (Del. Com. Pl. July 11, 2013) (*citing O'Connor v. Diamond State Telephone Co.*, 503 A.2d 661, 663 (Del. Super. 1985)).

[18] *Levy v. HLI Operating Co.*, 924 A.2d 210, 220 (Del. Ch. 2007) (citations omitted) ("In an action for subrogation, the insurer does stand in those shoes and may demand full payment from another party primarily responsible for the loss which the insurer both insured and reimbursed.")

[19] Def. Ex. 5. While Defendant did not provide a warranty for restoring the lower roof, it did provide a warranty for restoring the upper roof since it was re-roofing the entire upper roof and not merely fixing minor repairs.

6

displayed that degree of skill or knowledge normally possessed by members of [his] profession or trade in good standing in similar communities."[20]

Regardless of whether Defendant completed the roofing work on October 10, 2013, or October 12, 2013, the record shows that there was water damage to the girl's room, the boy's room, and the storage room on October 13, 2013, after Defendant completed the roofing restoration. While Defendant argues that the water damage was pre-existing, both the testimony and evidence presented at trial indicate that the water damage for which Plaintiff seeks recovery was not pre-existing. Smith testified that when he first inspected Filipek's home in March 2012, he saw a number of old water stains on the ceiling of Filipek's master bedroom, however, Plaintiff did not issue payment for the old stains from the master bedroom, nor is Plaintiff alleging that Defendant is liable for those stains. Instead, Plaintiff alleges that Defendant is responsible for the water damage that is evidenced by the stains on the ceiling of the girl's room, boy's room, and storage room. As evidenced by Fallon's testimony,[21] and Plaintiff's documentary evidence,[22] the water damage to those rooms was new.

The fact that there was new water damage to the ceilings of the girl's room, boy's room, and storage room as of October 21, 2013, eleven (11) days after Defendant claims that it completed the roofing installation, demonstrates that the upper roof was not constructed in a workmanlike manner. Indeed, the drywall and insulation was so damaged by the water, and was so soaking wet, that it needed to be torn out, thrown away, and replaced. That magnitude of water damage should not have occurred if Defendant had replaced Filipek's roof in a

---

[20] *Marcano v. Dendy*, 2007 WL 1493792, at *6 (Del. Com. Pl. May 22, 2007) (*citing Shipman v. Hudson*, 1993 WL 54469, at *3 (Del. Super. 1993)).

[21] Fallon testified that the thermal scope that he viewed at his inspection indicated that the insulation was wet. He also testified that when he felt the drywall, it was soft, which is further evidence that it was wet.

[22] *See* Pl. Ex. 2. In the estimate that Fallon drafted, some the descriptions of the remediation services included fees for tearing out and bagging wet insulation and wet drywall in the girl's room, boy's room, and storage room.

7

workmanlike manner. While the parties disagree on the date in which Defendant completed the work, under either scenario, Defendant's construction failed to be conducted in a proper workmanlike manner. If, as Defendant contends, Defendant completed the work in two days – October 9th and 10th – then the water damage was a result of faulty construction and thus, negligence. If, on the other hand, Defendant completed the project on October 12th, as Plaintiff contends, then the resulting water damage was a result of Defendant's failure to properly tarp the unfinished portion of the roof during the intervening rainstorm and/or faulty construction. In either event, Filipek paid to have her roof replaced and, after the completion of the work, there was significant water damage to Filipek's home. Therefore, the Court finds that Plaintiff established its negligence claim against Defendant.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Plaintiff Atlantic States Insurance Company, and against Defendant Charles C. Connell Company, and enters judgment in the amount of $2,915.51.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie,
Judge